CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

APR 1 5 2009

JOHN F. CORCORAN, CLERK
BY: _____
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| TURBOMIN AB, ET AL., | CIVIL NO. 6:09cv00007 |
| *Plaintiffs,* | |
| v. | MEMORANDUM OPINION |
| BASE-X, INC., ET AL., | |
| *Defendants.* | JUDGE NORMAN K. MOON |

This matter is before the Court on Defendant's Motion to Dismiss [docket no. 10]. The motion has been fully briefed and was argued before this Court on April 3, 2009. For the following reasons, the motion will be granted in part and denied in part.

## I. BACKGROUND

The Plaintiffs in this matter are Turbomin AB ("Turbomin"), a Swedish engineering consulting firm, and its owner and sole employee, Goran Almé. The Defendants are Base-X, Inc. ("Base-X"), a Virginia corporation, and Dan Gilbert, an employee of Base-X. In March 2007, Base-X contacted Turbomin to request assistance in preparing and submitting a proposal for the supply of tactical soft wall shelters and equipment to the Swedish government. The Swedish Defense Material Administration (the "FMV") had announced a Request for Proposals ("RFP") on March 12, 2007. Because of Plaintiff Almé's experience and background working with the FMV, Base-X requested that he serve as its project leader in Sweden for this proposal.

Almé subsequently advised and assisted Base-X with the preparation of the proposal, which was timely submitted to the FMV on April 10, 2007. On May 2, 2007, the FMV

announced that Base-X was the successful bidder and issued a purchase order (referred to in the Complaint as the "Base Order"). The Base Order specified certain goods and services to be delivered by Base-X on November 30, 2007. The Base Order also gave the FMV an option to make additional purchases at any time through June 30, 2010. The option listed the available goods, specified the quantity of each, and set the price for each item. The option provided that the FMV was "entitled but not obliged to order" those goods in one or more future orders.

Throughout the process of preparing the proposal, Almé relied on a promise from Base-X that it would enter into an agreement with him to compensate him for his work on the proposal and for any future services he provided to Base-X. On April 27, 2007, Almé emailed Base-X to request an agreement; Base-X responded the same day indicating its intention to discuss a formal agreement. On May 21, 2007, Base-X, Almé, and Turbomin entered into a Marketing Agreement (the "Agreement"). The Marketing Agreement grants Turbomin the right to market and sell Base-X products to customers in Sweden, Norway, Denmark and Finland. It also provided that Turbomin would continue to represent Base-X as project leader and liaison with respect to the Base Order. The Agreement provided for a commission of 7% of gross revenues from goods and services purchased by the FMV pursuant to the Base Order during the term of the Agreement. The Agreement was subject to termination on 30 days notice by either party. If the Agreement were terminated prior to December 31, 2010, the Agreement obliged the parties to renegotiate the compensation due to Turbomin for its services related to the Base Order.

The FMV placed orders under the option provision of the Base Order on June 20, 2007 and November 20, 2007, and Base-X paid Turbomin a 7% commission on those orders. On November 9, 2007, Base-X notified Almé of its intention to terminate the Agreement effective December 8, 2007. After termination of the Agreement, Base-X did not attempt to renegotiate

-2-

the compensation due to Turbomin with respect to the Base Order.

The FMV continued to place orders under the Base Order, including orders on December 10, 2007 and June 11, 2008. Turbomin requested a 7% commission on these orders, but Base-X refused to pay it. Base-X has also indicated that it is unwilling to make any future payments to Turbomin related to the Base Order. The Plaintiffs therefore bring claims against Base-X and Dan Gilbert for breach of contract, conspiracy to interfere with business reputation under Va. Code Ann. §§ 18.2-499 – 500, and common law conspiracy to induce breach of contract.

## II. STANDARD OF REVIEW

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999). In considering a Rule 12(b)(6) motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *See id.* at 244; *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254–55 (W.D. Va. 2001). The plaintiff must allege facts that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007).

## III. DISCUSSION

### A. BREACH OF CONTRACT

The Plaintiffs bring a claim for breach of contract against Base-X only. Under Virginia law[1], the elements of a claim for breach of contract are: (1) a duly executed and enforceable agreement; (2) the plaintiff's performance, or offers to perform, in accordance with the terms of

---

[1] The Marketing Agreement provides that it "will be governed by and construed according to the laws of the Commonwealth of Virginia." Such forum selection clauses are generally enforced by federal courts, *M /S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 13 (1972), as well as in Virginia, *Paul Business Systems v. Canon U.S.A., Inc.*, 240 Va. 337, 397 S.E.2d 804 (1990). Neither party disputes the applicability of Virginia law to this case.

-3-

the contract; (3) the defendant's breach or failure to perform under the agreement; and (4) actual damages sustained by the plaintiff that are recoverable under Virginia law. *Bryant v. Washington Mut. Bank*, 524 F.Supp.2d 753, 757-58 (W.D.Va. 2007). A court may dismiss a breach of contract claim pursuant to Rule 12(b)(6) if, having given due consideration to the plaintiff's factual allegations, the court finds that the contract is unambiguous with respect to all of the plaintiff's breach of contract allegations. *Levinson v. Massachusetts Mutual Life Insurance Co.*, 2006 WL 3337419 (E.D.Va. 2006) (applying *Stewart v. Pension Trust of Bethlehem Steel Corp.*, 12 F.App'x 174 (4th Cir. 2001)). A writing is ambiguous if it "may be understood in more than one way." *Centennial Broad., LLC v. Burns*, 254 Fed. Appx. 977, 982 (4th Cir. 2009) (internal quotation marks omitted) (citing *Video Zone, Inc. v. KF&F Properties, L.C.*, 594 S.E.2d 921, 923 (Va. 2004). However, "a document is not ambiguous merely because the parties disagree as to the meaning of the language employed by them in expressing their agreement." *Amos v. Coffee*, 320 S.E.2d 335, 337 (Va. 1984) (internal quotation marks omitted).

The element at issue in this case is whether Base-X breached or failed to perform under the agreement. The Plaintiffs allege that Base-X breached the Marketing Agreement in either of two ways: 1) by failing to pay the Plaintiffs the 7% commission on the December 2007 and June 2008 orders by FMV, as well as on any subsequent purchase options exercised by the FMV pursuant to the Base Order; or 2) by refusing to renegotiate the compensation due to the Plaintiffs under the Base Order when Base-X terminated the Agreement. Base-X argues that the Marketing Agreement did not require them to do either.

The Marketing Agreement provides: "For all closed sales of BASE-X products during the term of this Agreement or as otherwise set forth TURBOMIN shall be paid a minimum commission," according to a schedule, which provides for a commission of 7% "of the gross

-4-

revenues from the sale of BASE-X goods and services, less any taxes." The Agreement further provides: "Should the Agreement for Marketing Rights be terminated prior to December 31, 2010, the parties agree to renegotiate the compensation due to TURBOMIN for services provided under [the Base Order]."

The Plaintiffs contend that they are entitled to commissions on all purchase options exercised by the FMV pursuant to the Base Order, even after the termination of the Agreement, because the Base Order itself closed prior to the termination of the Marketing Agreement. The FMV has in fact made several additional purchases from Base-X since Base-X terminated the Marketing Agreement. The Plaintiffs argue that at the very least, Base-X was required to renegotiate the compensation due to Turbomin for the additional purchases made by the FMV pursuant to the Base Order. At the time the parties entered into the Marketing Agreement, they both anticipated that the Base Order would be worth several hundred million Swedish Kroner[2] over the course of its term. The Plaintiffs argue that the renegotiation provision embodies the expectation that the Plaintiffs would receive compensation commensurate with the entire value of the Base Order, including the purchase options exercised by the FMV throughout the duration of the Base Order, because Turbomin was instrumental in securing the Base Order for Base-X.

Base-X argues that it is not required to pay Turbomin a commission on any sale that closes after termination of the Marketing Agreement, and that new orders placed by the FMV pursuant to the option provision of the Base Order close when they are filled and paid for. Base-X argues that the purchases made pursuant to the option provision are new sales, and that they did not close at the time the Base Order itself closed. Base-X argues that the Marketing Agreement clearly provides for commissions only on orders that close during the term of the

---

[2] As of the date of this opinion, one U.S. dollar equates to approximately eight Swedish Kroner ("SEK"). Thus, 100 million SEK is approximately $12,230,000.

Case 6:09-cv-00007-NKM-mfu   Document 28   Filed 04/15/09   Page 5 of 9   Pageid#: 318

Agreement. Base-X further argues that it was only required to renegotiate the compensation due to Turbomin upon termination of the Agreement if Turbomin had provided services that led to a sale that closed after the termination of the Agreement. Base-X explains that this provision embodies the principle of *quantum meruit* and nothing more, and was intended only to ensure that Turbomin received just compensation for all services provided prior to termination of the Agreement.

By its own terms, the renegotiation provision of the Agreement is not contingent on any circumstance other than the termination of the Agreement prior to December 31, 2010. The renegotiation provision is not ambiguous because the language is clear and may be read only one way. The parties cannot create an ambiguity by disagreeing about their intent in including the language in the Agreement. *See Cohan v. Thurston*, 292 S.E.2d 45, 46 (Va. 1982) ("Parol evidence cannot be used to first create an ambiguity and then remove it."). Base-X terminated the Agreement prior to December 31, 2010. If Base-X failed to renegotiate with the Plaintiffs as alleged, they have breached their contractual duty. Therefore, I find that the Plaintiffs have stated a breach of contract claim against Base-X.

## B. STATUTORY CONSPIRACY TO INTERFERE WITH BUSINESS REPUTATION

The Plaintiffs allege that Base-X, Gilbert, and another individual, Per Lindstrand, violated Va. Code Ann. §§ 18.2-499 – 500 when they conspired to damage Turbomin's business relationship with Base-X. Under Virginia Code § 18.2-500, "[a]ny person who [is] injured in his reputation, trade, business or profession by reason of a violation of § 18.2-499" – Virginia's conspiracy statute – may seek relief in a civil court. Va. Code Ann. § 18.2-500. The relevant portion of Virginia Code § 18.2-499 imposes liability on "[a]ny two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of ... willfully

-6-

and maliciously injuring another in his reputation, trade, business or profession by any means whatever...." Va. Code Ann. § 18.2-499.

A claim for statutory civil conspiracy under Virginia law must allege: "(1) concerted action; (2) legal malice; and (3) causally related injury." *Schlegel v. Bank of America, N.A.*, 505 F. Supp. 2d 321, 325 (W.D.Va. 2007); *see also Allen Realty Corp. v. Holbert*, 227 Va. 441, 449, 318 S.E.2d 593, 596 (1984). "Concerted action" reflects the statutory requirement that a plaintiff ultimately prove that someone "combined, associated, agreed, mutually undertook, or concerted together" with someone else in the injurious conduct. *See* Va.Code Ann. § 18.2-499; *Simmons v. Miller*, 261 Va. 561, 544 S.E.2d 666, 677 (2001). This means that a plaintiff must prove that the defendants "combined together to effect a preconceived plan and unity of design and purpose." *Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*, 261 F.Supp.2d 483, 499 (E.D.Va.2003) (internal quotation marks omitted).

"Business conspiracy, like fraud, must be pleaded with particularity." *Gov't Employees Insur. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 706 (E.D. Va. 2004) (citing *Bay Tobacco*, 261 F. Supp. 2d at 499). This "heightened pleading standard prevents every business dispute [from] becoming a business conspiracy claim." *Id.* (internal quotations omitted). While the Plaintiffs dispute that any "heightened pleading standard" applies to business conspiracy claims in Virginia, it is clear that more than conclusory allegations are required to survive a motion to dismiss, and allegations that merely track the language of the statute are insufficient. *Kayes v. Keyser*, 72 Va. Cir. 549, 552 (Cir. Ct. 2007).

The Plaintiffs in this case have made only conclusory allegations of a conspiracy. They allege that Lindstrand "communicated" with the Defendants "regarding Mr. Almé's performance under the Agreement" for the purpose of damaging Turbomin's business relationship with Base-

-7-

X. They allege that Lindstrand suggested to Base-X that Almé had failed to perform his duties under the Agreement and "threaten[ed] Mr. Almé with loss of future prospects for doing business with FMV unless Turbomin capitulated to the objectives of Mr. Lindstrand's interference." However, the Complaint provides no other details regarding those communications or any other acts of Base-X or Gilbert that might suggest concerted action between them and Lindstrand. There are no allegations describing a preconceived design or plan among the alleged conspirators. Under any pleading standard, these allegations are clearly insufficient to state a claim of business conspiracy. *See First Hand Comm., LLC v. Schwalbach,* No. 1:05cv1281, 2006 WL 3500901, at *5 (E.D.Va. Dec. 4, 2006) (dismissing a business conspiracy claim where, "[i]n direct conflict with the guidance from *Bay Tobacco,* [plaintiffs] fail to aver any concerted action or preconceived plan, but instead ambiguously plead a conspiracy of 'working together in a scheme'").

### C. COMMON LAW CONSPIRACY TO INDUCE BREACH OF CONTRACT

Under Virginia common law, "a civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish some criminal or unlawful purpose or to accomplish some purpose not in itself criminal or unlawful by criminal or unlawful means." *Bay Tobacco,* 261 F. Supp. 2d at 499. As with Virginia's statutory business conspiracy claim, a common law conspiracy claim requires Plaintiffs to adequately allege concerted action. *Id.* For the reasons discussed above, the Complaint does not sufficiently allege concerted action, and therefore this claim will be dismissed.

-8-

## IV. CONCLUSION

For the foregoing reasons, the Defendant's motion will be granted with respect to all claims except Plaintiffs' claim for breach of contract against Base-X. The Plaintiffs' business conspiracy claims will be dismissed without prejudice, and the Plaintiffs may move for leave to amend the Complaint to state conspiracy claims within 14 days of the entry of the accompanying Order.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion to all counsel of record. An appropriate Order will follow.

ENTERED: This _15th_ Day of April, 2009.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

Case 6:09-cv-00007-NKM-mfu   Document 28   Filed 04/15/09   Page 9 of 9   Pageid#: 322