CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

JUN 29 2009

JOHN F. CORCORAN, CLERK
BY: /s/ J. Jaalee
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | |
|---|---|
| TURBOMIN AB, ET AL., | CIVIL NO. 6:09cv00007 |
| Plaintiffs, | |
| v. | MEMORANDUM OPINION |
| BASE-X, INC., ET AL., | |
| Defendants. | JUDGE NORMAN K. MOON |

This matter is before the Court on the Plaintiffs' Motion for Leave to File an Amended Complaint [docket no. 33]. The Defendant opposes the motion, which has been fully briefed. For the following reasons, the Plaintiff's motion will be granted.

## I. BACKGROUND

The facts as alleged in the Complaint are set out in the Court's Memorandum Opinion dated April 15, 2009. In that Opinion, I denied the Defendants' Motion to Dismiss the Plaintiffs' breach of contract claim, but I granted the Defendants' Motion to dismiss the Plaintiffs' conspiracy claims because the allegations of conspiracy in the Complaint were too vague and conclusory to adequately state a claim. The Plaintiffs then moved for leave to amend the Complaint in order to allege additional facts in support of their business conspiracy claims.

The proposed Amended Complaint sets out the basis of Plaintiffs' business conspiracy claims in greater detail than the original Complaint. The Amended Complaint alleges that various employees of Base-X, including Defendant Gilbert and James Maurer, conspired with

Per Lindstrand[1] to damage the Plaintiffs' business relationship with Base-X, their business reputation, and their prospects for future business. Lindstrand is a resident of the United Kingdom, but was born and raised in Sweden. He has known Plaintiff Almé for many years, and Almé had worked for Lindstrand's company, Lindstrand Technologies Ltd., for several years in the past. When Base-X was preparing its proposal for the Swedish FMV, it had discussed the possibility of Lindstrand Technologies participating in the proposal as a subcontractor. However, that arrangement did not come to pass. The Plaintiffs now allege that Lindstrand conspired with the Defendants to interfere with Base-X's relationship with the Plaintiffs because he was disgruntled over being excluded from Base-X's proposal to the FMV. The Plaintiffs also allege that as a result of the conspiracy, Lindstrand hoped to share in Base-X's profits from its business with the FMV, or to be otherwise rewarded by Base-X.

In support of these claims, the Plaintiffs provide several emails among Base-X, Lindstrand and Almé. The first email is one from Defendant Gilbert to Lindstrand dated April 18, 2008.[2] Gilbert's email explained to Lindstrand that Base-X was dissatisfied with the services provided by Almé, that he thought Almé was building a bad reputation with the FMV, and that he thought Lindstrand's business opportunities with the FMV were "sure to be affected" by Almé's conduct. Lindstrand then wrote to Almé the same day, forwarding Gilbert's email. Lindstrand told Almé that unless Almé abandoned his claims against Base-X, Lindstrand would cut his own business ties with Almé and would withhold payment of commissions due to Turbomin from Lindstrand Technologies. The Plaintiffs allege that these emails were intended to induce Base-X to breach its contract with the Plaintiffs and to force the Plaintiffs to abandon their claims to any additional compensation from Base-X.

---

[1] Lindstrand is not a party to this action.
[2] This email comes several months after Base-X terminated the Marketing Agreement with Almé on December 8, 2007.

Almé then sent an email to Base-X and Lindstrand on April 25, 2008, requesting a meeting to discuss the situation, and asserting his belief that Base-X was pressuring Lindstrand in order to get Lindstrand to pressure Almé to drop his claims against Base-X. Lindstrand responded by email on May 8, 2008, and said that by continuing to pursue his claims against Base-X, Almé was endangering his reputation with Lindstrand. Lindstrand also advised Almé that his efforts to get more money out of Base-X were essentially pointless. The Plaintiffs allege that Lindstrand copied Base-X on this email in order to solidify Base-X's resolve to breach the Marketing Agreement with Almé. Thus, the Plaintiffs argue that these emails show a conspiracy between Base-X and Lindstrand to injure Almé and Turbomin in their business and reputation.

## II. STANDARD OF REVIEW

Leave to amend a complaint should be freely granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, "[i]f the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend." 6 Charles Alan Wright, et al., *Federal Practice and Procedure: Civil* § 1487 (3d ed.1998) (citations omitted). Thus, courts have often held that "if a complaint as amended could not withstand a motion to dismiss, then the amendment should be denied as futile." *Id.* (citations omitted); *see also Perkins v. U.S.*, 55 F.3d 910, 917 (4th Cir.1995) ("[T]he district court was justified in denying Mrs. Perkins' motion to amend her complaint because the proposed amendments could not withstand a motion to dismiss").

Accordingly, in determining whether the proposed amendments would be futile, the court should apply the standard used to decide a motion to dismiss under Rule 12(b)(6). The court must accept all allegations in the amended complaint as true and must draw all reasonable inferences in favor of the plaintiff. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th

-3-
Case 6:09-cv-00007-NKM-mfu Document 50 Filed 06/29/09 Page 3 of 9 Pageid#: 592

Cir. 1999); *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254–55 (W.D. Va. 2001). The court, however, "need not accept the legal conclusions drawn from the facts, and we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)) (internal quotations omitted). The plaintiffs must allege facts in the amended complaint that "state a claim to relief that is plausible on its face" and that "nudge[] their claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### III. Discussion

#### A. Statutory Conspiracy to Interfere with Business Reputation

The Plaintiffs allege a conspiracy in violation of Virginia Code §§ 18.2-500, which provides that "[a]ny person who [is] injured in his reputation, trade, business or profession by reason of a violation of § 18.2-499" – Virginia's conspiracy statute – may seek relief in a civil court. The relevant portion of Virginia Code § 18.2-499 imposes liability on "[a]ny two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of . . . willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever. . . ."

Thus, a claim for statutory civil conspiracy under Virginia law must allege: "(1) concerted action; (2) legal malice; and (3) causally related injury." *Schlegel v. Bank of America, N.A.*, 505 F. Supp. 2d 321, 325 (W.D.Va. 2007); *see also Allen Realty Corp. v. Holbert*, 227 Va. 441, 449, 318 S.E.2d 593, 596 (1984). More than conclusory allegations are required for a business conspiracy claim to survive a motion to dismiss, and allegations that merely track the language of the statute are insufficient. *Kayes v. Keyser*, 72 Va. Cir. 549, 552 (Cir. Ct. 2007).

Case 6:09-cv-00007-NKM-mfu Document 50 Filed 06/29/09 Page 4 of 9 Pageid#: 593

Thus, the first issue is whether the Amended Complaint adequately alleges facts that show or support an inference of concerted action. The "concerted action" element reflects the statutory requirement that a plaintiff ultimately prove that someone "combined, associated, agreed, mutually undertook, or concerted together" with someone else in the injurious conduct. *See* Va.Code Ann. § 18.2-499; *Simmons v. Miller*, 544 S.E.2d 666, 677 (Va. 2001). This means that a plaintiff must prove that the defendants "combined together to effect a preconceived plan and unity of design and purpose." *Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*, 261 F.Supp.2d 483, 499 (E.D.Va.2003) (internal quotation marks omitted).

The emails between Base-X, Lindstrand, and Almé suggest that Lindstrand and the Defendants each had a motive to conspire, and that each stood to gain from the success of the alleged conspiracy. Base-X wanted to end its relationship with Almé and avoid paying the Plaintiffs any additional compensation under the Marketing Agreement. It had terminated the Marketing Agreement and had told Almé that it would not pay him any further commissions, but Almé was unwilling to abandon his claim to additional compensation from Base-X. Base-X told Lindstrand in the email dated April 18, 2008 that its relationship with the Swedish FMV was at risk due to the conflict between Base-X and Almé. Base-X was unable to resolve the conflict on its own with Almé; therefore, Base-X needed Lindstrand's help in order to save its lucrative business with the FMV. For his part, Lindstrand was motivated to agree to help Base-X deal with Almé because Base-X represented a significant amount of Lindstrand's business in the United States. Lindstrand stated to Almé in his email dated April 18, 2008 that because of the situation with Almé, Base-X had stopped placing orders with Lindstrand, which would "in a very short term bankrupt Lindstrand USA."

These emails further suggest that Base-X and Lindstrand had previously discussed the conflict between Base-X and Almé, and that Base-X had enlisted Lindstrand's help in dealing with Almé, once the conflict arose. For example, Lindstrand made several statements in his email to Almé dated April 18, 2008 that indicate that prior discussions among himself and the parties had taken place. He first noted that his email to Almé was in reference to "our telephone conversation the other day." Clearly, Lindstrand and Almé had already discussed the situation between Almé and Base-X, and Lindstrand's email was simply a continuation of that discussion. Lindstrand also stated that Base-X had *already* cut business with Lindstrand because of Almé's "interference." This shows that Base-X had communicated its position regarding Almé to Lindstrand prior to the date of these emails. Further, Lindstrand stated that Base-X was preparing to sue Almé "to recover $250,000 which [Almé] wasted in the contract between Base-X and FMV by not specifying the correct materials and not identifying materials to be used." This statement was not contained in Gilbert's email to Lindstrand dated April 18, 2008. Therefore, Lindstrand's knowledge of this fact could only have come from his previous communications with Base-X. Finally, the fact that Lindstrand sent such an email to Almé and injected himself into the conflict between Base-X and Almé suggests that Lindstrand had agreed to help Base-X resolve its conflict with Almé by pressuring Almé himself. While there is no direct evidence of an agreement between Base-X and Lindstrand, and that such an agreement existed is certainly not the only conclusion that may be drawn from these facts, at this stage of the litigation, I am required to draw all inferences in favor of the Plaintiffs. I therefore conclude that the factual allegations in the Amended Complaint lead to a plausible inference of concerted action.

The emails between Base-X, Lindstrand and Almé also show that the purpose of the

alleged agreement between Lindstrand and Base-X may constitute legal malice. "Legal malice" requires showing "that the defendant acted intentionally, purposefully, and without lawful justification" to injure the plaintiff. *Simmons v. Miller*, 544 S.E.2d 666, 677 (Va. 2001). The term "without lawful justification" means that a plaintiff must allege that the defendant "contrived to accomplish some criminal or unlawful purpose, or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means." *Virginia Vermiculite, Ltd. v. W.R. Grace & Co.-Conn.*, 108 F.Supp.2d 549, 605-06 (W.D. Va. 2000) (citing *Carpenter v. Drechsler*, 1991 WL 332766 at *8 (W.D.Va. May 7, 1991) *aff'd*, 19 F.3d 1428 (4th Cir. 1994)). Further, under Virginia's business conspiracy statute, a plaintiff need not prove that the defendant's primary and overriding purpose was to injure the plaintiff's reputation, trade, or business, but the plaintiff must prove that it was at least one of the purposes of the conspiracy. *See Simmons*, 544 S.E.2d. at 676-77.

In ruling on Defendants' motion to dismiss, I held that the Complaint stated a claim for breach of contract, because it alleged that Base-X had failed to renegotiate the compensation due to Almé under the Base Order after Base-X terminated the Marketing Agreement. In examining the business conspiracy claim in the Amended Complaint, Plaintiffs' allegations regarding its own performance under the Marketing Agreement, as well as Plaintiffs' allegations that the Defendants breached that contract, must be taken as true.

Essentially, the Amended Complaint alleges that Base-X conspired with Lindstrand in order to get away with its own breach of contract by pressuring the Plaintiffs to abandon their right to renegotiation and any other legal claims against Base-X. Lindstrand applied pressure on Almé by threatening to sever his business ties with Almé and by withholding payment of commissions due to Almé, in an attempt to force Almé to accept Base-X's breach of contract.

Breach of contract is an unlawful purpose that may form the basis of a conspiracy claim. *See T.G. Slater & Son, Inc. v. Donald P. and Patricia A. Brennan LLC*, 385 F.3d 836, 845-46 (4th Cir. 2004). Thus, the Amended Complaint alleges an unlawful purpose and the Defendants' intent to injure the Plaintiffs in their reputation, trade or business.

Finally, the Amended Complaint alleges the third element of business conspiracy: causal injury. Although the alleged conspirators did not succeed in their goal of inducing the Plaintiffs to abandon their legal claims against Base-X, the Plaintiffs have alleged a monetary injury as a result of the conspiracy. The Plaintiffs alleges that as a result of Base-X's refusal to renegotiate the compensation due under the Base Order, Base-X still owes them a significant amount of money. The Plaintiffs have also alleged that, in order to pressure them into abandoning their claims against Base-X, Lindstrand has withheld payment of commissions that Almé had earned and invoiced to Lindstrand Technologies. These allegations suffice to show injury to the Plaintiffs arising from the alleged conspiracy.

In conclusion, it appears that under the deferential standard applied at this stage of litigation, the proposed Amended Complaint has alleged sufficient facts to withstand a motion to dismiss the statutory conspiracy claim. Therefore, the Plaintiffs will be granted leave to amend the complaint to state such a claim.

### B. COMMON LAW CONSPIRACY TO INDUCE BREACH OF CONTRACT

Under Virginia common law, "a civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish some criminal or unlawful purpose or to accomplish some purpose not in itself criminal or unlawful by criminal or unlawful means." *Bay Tobacco*, 261 F. Supp. 2d at 499. The parties both concede that the elements of common law conspiracy in Virginia are identical to those for statutory business conspiracy. Accordingly, for

the reasons stated above, I find that the Amended Complaint adequately alleges a claim for common law conspiracy.

## IV. CONCLUSION

For the foregoing reasons, the Plaintiffs' instant motion will be granted. The Clerk of the Court will be directed to docket the Amended Complaint together with all attachments. An appropriate order will follow.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

ENTERED: This 29th Day of June, 2009.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE